UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Izabella HMC-MF, LLC, | Case No. 19-cv-1147 (WMW/ECW) |
| Plaintiff, | |
| v. | **ORDER DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| Radisson Hotels International, Inc., | |
| Defendant. | |

In this contract dispute involving a hotel franchise, Plaintiff Izabella HMC-MF, LLC (Izabella) moves for a temporary restraining order and preliminary injunction to prevent Defendant Radisson Hotels International, Inc. (Radisson), from terminating its license agreement with Izabella. (Dkt. 6.) For the reasons addressed below, Izabella's motion is denied.

## BACKGROUND

Izabella is an Illinois limited liability company that owns and operates the Radisson Menomonee Falls hotel (the Hotel) located in Menomonee Falls, Wisconsin. Radisson is a Delaware corporation with its principal place of business in Minneapolis, Minnesota. Izabella has operated the Hotel as a Radisson-branded hotel since October 2014 pursuant to a license agreement between Izabella and Radisson (the License Agreement). The License Agreement provides that, for a 20-year term, Izabella must pay Radisson an initial fee and ongoing royalty, marketing, and reservation fees in exchange for the rights to operate a Radisson-branded hotel and use Radisson's reservation system. As relevant here,

Article 5.4 of the License Agreement provides that Izabella "may not perform any Construction or Renovation without [Radisson's] approval, except for routine maintenance and repair."[1] And under Article 18.3 of the License Agreement, Radisson may suspend the services of its reservation system after notice to Izabella of a material default until the default is cured.

Radisson sent Izabella a letter on January 29, 2019, alleging that Izabella was "in breach and default of the License Agreement for performing renovations at the Hotel without approval from Radisson." The letter states that, to cure the alleged default, Izabella "must cease all Renovations and make any necessary changes to the Renovations already performed so that the Renovations comply with the Radisson System." The letter also warns that, if Izabella fails to cure the alleged default by April 1, 2019, Radisson will exercise its right to terminate the License Agreement on May 1, 2019. According to Izabella, the only actions Izabella took before January 29, 2019, that might be characterized as "renovations" were the replacement of carpet, drapes, and lamps in two of the Hotel's guest rooms in October and November 2018. Radisson contends that these modifications were unapproved "renovations" as defined in the License Agreement. Moreover, Radisson maintains that Izabella renovated these two guest rooms as prototype "show rooms" in preparation to convert the Hotel to a non-Radisson brand in June 2019.

---

[1] The License Agreement defines "Renovation" to mean "[a]ll activities and plans, specifications, drawings, scheme boards and other information as to the planning, design, remodeling, redecorating, refurnishing, equipping, replacement of, and additions, alterations, improvements, redecorations and repairs to, the Hotel."

Izabella commenced this lawsuit on April 30, 2019, alleging that Radisson's threatened termination of the License Agreement is a violation of the Wisconsin Fair Dealership Law (WFDL), Wis. Stat. §§ 135.01 *et seq.* (Count 1) and an anticipatory breach of the License Agreement (Count 2). Izabella also filed the pending motion for a temporary restraining order and preliminary injunction on April 30, 2019, seeking a court order preventing Radisson from terminating the License Agreement. Radisson terminated the License Agreement on May 1, 2019.

## ANALYSIS

When determining whether a temporary restraining order or preliminary injunction is warranted, four factors are considered: the probability that the movant will succeed on the merits, the threat of irreparable harm to the movant, the balance between this harm and the injury that the injunction will inflict on other parties, and the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).[2] The burden to establish that injunctive relief should be granted rests with the movant. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). A preliminary injunction is an extraordinary remedy that is never awarded as of right. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Because the "failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction," *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 893 (8th

---

[2] Izabella seeks both a temporary restraining order and a preliminary injunction. The same legal standard applies to both forms of relief. *See S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989).

3

Cir. 2013) (internal quotation marks omitted), the Court begins its analysis with this *Dataphase* factor.

To obtain preliminary injunctive relief, a plaintiff must establish the threat of irreparable harm. *See Dataphase*, 640 F.2d at 114. "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). To demonstrate a threat of irreparable harm, the harm must be "certain and great and of such imminence that there is a clear and present need for equitable relief." *Roudachevski v. All-American Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) (internal quotation marks omitted). A mere "possibility of harm" is insufficient. *Id.*; *accord S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 779 (8th Cir. 2012) ("Speculative harm does not support a preliminary injunction.").

Izabella contends that violation of the WFDL, alleged in Count 1 of its complaint, entitles Izabella to a statutory presumption of irreparable harm. The WFDL provides, in relevant part, that "any violation of this chapter . . . is deemed an irreparable injury . . . for determining if a temporary injunction should be issued." Wis. Stat. § 135.065. Although the Wisconsin Supreme Court has not addressed this provision of the WFDL, federal courts have concluded that the WFDL provides only a *rebuttable* presumption of irreparable harm. *See, e.g.*, *S&S Sales Corp. v. Marvin Lumber & Cedar Co.*, 435 F. Supp. 2d 879, 885 (E.D. Wis. 2006) (denying motion for temporary restraining order, concluding that Section 135.065 of the WFDL "should be construed as creating a rebuttable presumption of irreparable harm and that the Wisconsin Supreme Court would so construe it," and

4

collecting cases reaching same conclusion); *accord Fleet Wholesale Supply Co. v. Remington Arms Co.*, 846 F.2d 1095, 1098 (7th Cir. 1988) (affirming denial of preliminary injunction under the WFDL based in part on lack of irreparable injury and stating that a "district court need not treat [the statutory] presumption as conclusive"). Izabella does not appear to dispute that the WFDL's presumption of irreparable harm is rebuttable, and this Court agrees with the persuasive reasoning of those federal courts that have reached the same conclusion. Accordingly, if Radisson "presents evidence of the absence of irreparable injury, the presumption is no longer relevant, and [Izabella] must come forward with evidence negating [Radisson's] evidence." *S&S Sales Corp.*, 435 F. Supp. 2d at 886.

Here, Izabella argues that Radisson's termination of the License Agreement will cause irreparable harm by reducing the number of bookings for the Hotel and impairing Izabella's ability to attract customers, which will result in "a substantial loss of . . . revenue." But lost revenue is compensable in damages and does not support Izabella's entitlement to injunctive relief. *See, e.g.*, *Hinz v. Neuroscience, Inc.*, 538 F.3d 979, 986-87 (8th Cir. 2008) (affirming district court's denial of injunctive relief when the "only injury [plaintiff] has identified in this action is lost profits, which are obviously compensable with money damages" (internal quotation marks omitted)); *Wave Form Sys., Inc. v. AMS Sales Corp.*, 73 F. Supp. 3d 1052, 1058 (D. Minn. 2014) (concluding that "any harm resulting from lost or diverted profits caused by customers leaving" franchisee if franchisor terminates relationship "is not irreparable"). If Izabella prevails on the merits of its lawsuit, any financial harm it incurs can be compensated with an award of money damages. Indeed, Izabella "estimates that the Hotel would lose approximately $175,000

*per month* in revenue if Radisson terminates the License Agreement," which belies Izabella's argument that its damages will be "impossible to ascertain." Despite its conclusory assertions, Izabella has not demonstrated why its potential lost revenue would be unreasonably difficult to calculate, let alone impossible. As such, Izabella has not established that the anticipated reduction in its revenue is an irreparable harm.

The only other harm that Izabella alleges is the anticipated harm to its reputation and goodwill if it loses its Radisson branding. "Loss of intangible assets such as reputation and goodwill can constitute irreparable injury." *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002). But the goodwill arising from a licensed brand belongs to the licensor, not the licensee. *See, e.g.*, *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 277 F.3d 253, 259 (2d Cir. 2002) (recognizing that "the source of the goodwill inhering in [licensed] trademarks" belongs to the licensor, not the licensee). Here, the License Agreement expressly provides that Radisson "own[s] the [Radisson] Marks *and all goodwill associated with* the [Radisson] Marks." (Emphasis added.) Izabella has not demonstrated that its loss of the Radisson branding will irreparably harm any goodwill that belongs to *Izabella*, as opposed to Radisson. Moreover, to the extent that Izabella suffers harm to its own reputation or goodwill, that harm is compensable by monetary damages for lost revenue. For these reasons, any alleged harm to Izabella's reputation and goodwill is insufficient to support Izabella's entitlement to injunctive relief.

Radisson further contends that any harm that Izabella might suffer is not irreparable and will be minor, temporary, and self-inflicted. This is because, Radisson argues, Izabella's alleged default of the License Agreement arises from its ongoing efforts to

convert the Hotel to a non-Radisson brand in June 2019. Radisson's evidence presented in support of these assertions includes employee declarations, photographs, emails, letters, and other documents showing that Izabella sought to terminate the License Agreement in 2018 and intends to complete its conversion of the Hotel to a competing brand in June 2019.[3] Based on this evidence, and the reasons addressed above, Radisson maintains that it has rebutted any statutory presumption of irreparable harm under the WFDL. Izabella disagrees, relying on *Romper Room Inc. v. Winmark Corp.*, in which the United States District Court for the Eastern District of Wisconsin granted a preliminary injunction and concluded that the presumption of irreparable harm under the WFDL had not been rebutted. 60 F. Supp. 3d 993, 997 (E.D. Wis. 2014). But the district court in *Romper Room* found that, absent a preliminary injunction, the individual plaintiffs would be forced to close their business—their only source of income and livelihood—in light of the noncompete provisions in their franchise agreement. *Id.* at 996-97. Because no such facts exist here, *Romper Room* is inapposite.

In summary, Radisson has rebutted the statutory presumption of irreparable harm under the WFDL. The absence of irreparable harm is, by itself, a sufficient reason to deny Izabella's motion for injunctive relief. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987). Because Izabella has failed to demonstrate irreparable harm and Radisson has rebutted any statutory presumption of irreparable harm under the WFDL, the

---

[3]  Although Izabella argued at the hearing on its motion that this conversion will not be completed until October 2019, Izabella presented no evidence to counter Radisson's evidence that the planned conversion will occur in June 2019.

7

Court need not address the remaining *Dataphase* factors. *See, e.g.*, *Medtronic, Inc. v. Ernst*, 182 F. Supp. 3d 925, 934-35 (D. Minn. 2016) (denying temporary restraining order based solely on plaintiff's failure to demonstrate irreparable harm); *Jackson v. Macalester Coll.*, 169 F. Supp. 3d 918, 922 (D. Minn. 2016) (same).

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff Izabella HMC-MF, LLC's motion for a temporary restraining order and preliminary injunction, (Dkt. 6), is **DENIED**.

Dated: May 10, 2019

s/Wilhelmina M. Wright
Wilhelmina M. Wright
United States District Judge